UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-83-FL

| | |
|---|---|
| ERVIN R. PITTMAN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Ervin R. Pittman ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings in part and denying the motion in part, denying Defendant's Motion for Judgment on the Pleadings in part and granting the motion in part, and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant filed an application for DIB and SSI payments on 13 May 2002, alleging disability beginning 12 April 2002. (R. 56-58, 359-61). Both claims were denied initially and upon reconsideration. (R. 38, 43-47, 40, 50-52, 362-66). A hearing before the Administrative Law Judge ("ALJ") was held on 5 August 2004, at which Claimant was represented by counsel

and a vocational expert ("VE") appeared and testified. (R. 382-426). On 13 December 2004, the ALJ issued a decision denying Claimant's claims. (R. 20-32). On 5 October 2007, the Appeals Council denied Claimant's request for review. (R. 7-10). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (2007). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) failure to make a severity finding regarding Claimant's left knee; (2) improperly assessing Claimant's credibility; (3) improperly assessing Claimant's residual functional capacity ("RFC"); and (4) concluding Claimant's work as a security guard qualifies as past relevant work ("PRW"). Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 14, 20, 22. ("Pl.'s Mem."). In the alternative, Claimant contends he is entitled to a closed period of disability. *Id.* at 25.

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 31). Next, the ALJ determined Claimant had the

3

following combination of severe impairments: (1) degenerative joint disease of the left shoulder; (2) degenerative joint disease of the right knee; (3) discogenic and degenerative disease of the lower spine; (4) carpal tunnel syndrome ("CTS"); (5) headaches; (6) asthma; and (7) obesity. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a wide range of semi-skilled light work,[1] push and pull 20 pounds occasionally using hand controls with left upper extremity, and frequently reach, handle and finger with his left upper extremity but only occasionally above the shoulder level. (R. 30). Due to Claimant's asthma, the ALJ noted Claimant "should avoid even moderate exposure to environmental irritants...." *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible based upon the medical evidence. (R. 31). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of his past relevant work as a security guard. *Id.*

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 41 years old and unemployed. (R. 387, 398). Claimant is a high school graduate and has attended trucking

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

school. (R. 387). Claimant was last employed full-time as a dump truck driver and oiler for a construction company and worked part-time as a security guard for a security agency. (R. 391-92). Claimant's past work experience also includes loading, unloading and driving a truck for a mail delivery service and for a telephone company. (R. 388, 390).

As a result of a motor vehicle accident and a work-related fall, Claimant testified that he is unable to perform his past work due to pain associated with his neck, low back, left wrist, shoulders, right hand, left knee and legs. (R. 396-98, 400-05). Despite undergoing two surgeries on his left shoulder in March 2001 and April 2002, Claimant explained he remains unable to lift or carry with his left arm. (R. 396-98). In April 2002, Claimant had carpal tunnel release on his left wrist; however, he continues to experience pain and swelling. (R. 400). Claimant experiences pain in his right shoulder and hand, which Claimant stated his doctor attributes to disc problems in his cervical spine. (R. 401). Claimant testified that his physician has considered cervical spine surgery. (R. 407). Claimant underwent a lumbar fusion in November 2002; however, he continues to experience lower back pain. As a result of his lower back pain, Claimant also endures shooting pains down both legs two to three times a week, with the pain lasting approximately forty-five seconds. (R. 403). Claimant takes medication, uses ice packs and lies down to relieve his back pain. (R. 404). In January 2004, Claimant underwent knee surgery as cortisone shots were no longer relieving his pain. (R. 404). While he experienced some pain relief as a result of the surgery, he continues to endure pain and takes medication accordingly. (R. 405).

As a result of his pain, Claimant stated his ability to walk and stand are limited. (R. 407). In particular, Claimant explained he can walk for ten to fifteen minutes before needing to lie

5

down and place ice on his left knee. (R. 408-09). He is capable of sitting for fifteen minutes before experiencing discomfort. (R. 409-10). Claimant also reported that he had difficulty lifting a gallon of milk. (R. 413). As for daily activities, Claimant lies down approximately three hours a day. (R. 412). Claimant can no longer run, play basketball or mow the lawn with a push mower. (R. 408). Claimant explained he has three "good" days a week (R. 412) and that a typical day is spent walking around the house and feeding his dog. (R. 411). On "bad" days, Claimant lies down and applies ice packs to his knee and back. (R. 411).

### III. Vocational Expert's Testimony at the Administrative Hearing

Ann T. Nehlicht, a Rehabilitation Consultant with a Ph.D. in Rehabilitation Research, testified as a VE at the administrative hearing only as to Claimant's past work experience. (R. 54-55, 418-22). In particular, the VE described Claimant past work as follows: (1) truck driver for a messenger service, which included pushing bins in and out of a truck and occasionally lifting packages weighing no more than twenty pounds - medium, semi-skilled, SVP 3; (2) security guard - DOT 372.667-034, light, semi-skilled, SVP 3; (3) dump truck driver - DOT 902.683-010, medium, unskilled, SVP 2; and (4) oiler - DOT 921.667-022, medium, semi-skilled, SVP 3. (R. 419-21). The VE testified further that the security guard position required frequent reaching and handling (defined by the DOT as one-third to two-thirds of the workday) with the dominant hand, but no fingering. (R. 421). The VE stated no conflicts exist between her testimony and the DOT. *Id.*

## DISCUSSION

**I. The ALJ's failure to classify Claimant's left knee as a severe impairment is not reversible error.**

Claimant argues that the ALJ erred in the second step of the sequential evaluation process by failing to make an express determination regarding the severity or non-severity of Claimant's left knee and contends that this failure is reversible error. Pl.'s Mem. at 20-21. This Court disagrees.

At step two, an ALJ must determine whether a claimant's impairment(s), individually or in combination are "severe." 20 C.F.R. §§ 404.1523, 416.923. As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process, which in this case, was done. *See* 20 C.F.R. §§ 404.1523, 416.923; *see also* Soc. Sec. Rul. ("S.S.R.") 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining when an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). In particular, the ALJ thoroughly discussed the evidence relating to all of Claimant's impairments, including a diagnosis of left knee degenerative joint disease and left knee osteoarthritis, and took the combination of Claimant's impairments into account in determining his RFC. (R. 27-28); *see Newsome v. Barnhart*, 444 F. Supp. 2d 1195, 1200-01 (M.D. Ala. 2006) (where the ALJ did not specifically address the claimant's diagnosis of Oppositional Defiant Disorder ("ODD") and did not make a finding as to whether ODD constituted a severe impairment, the court nonetheless affirmed the ALJ's decision because the ALJ "did consider and discuss the underlying evidence relating to [claimant's] ODD"); *see also*

*Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) (no error in ALJ failing to determine whether anxiety and pain disorders were "severe" at step two if evidence of disorders was considered in reaching conclusion at step five); *see also Mariarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding failure to find that an impairment severe was harmless error where other impairments were deemed severe). Accordingly, because the ALJ did not end his analysis at step two, but continued with the remaining steps in his disability determination, the ALJ's failure to set forth a specific finding as to the severity or non-severity of Claimant's back impairment did not constitute reversible error. *See Ottman*, 306 F. Supp. 2d at 839.

## II. The ALJ improperly assessed Claimant's credibility.

Claimant contends the ALJ failed to analyze his subjective complaints of pain in the manner mandated by *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). *See* Pl.'s Mem. at 14-19. This Court agrees.

*Craig* requires an ALJ to evaluate subjective claims of pain and other symptoms according to a two-step process. *Craig*, 76 F.3d at 594; *see also Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006). First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* at 594; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain,

evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96.

In *Craig*, the ALJ found that the claimant had severe impairments of the musculoskeletal system, but that her subjective claims of pain were not credible. *Id* at 589. The Fourth Circuit reversed and remanded the case because the ALJ had turned immediately to assessing the claimant's credibility, but without first expressly resolving the threshold question of whether the claimant had a medical impairment which reasonably might be expected to cause the kind of pain she alleged. *Id.* at 596. The ALJ in this case likewise found that Claimant had a number of severe impairments, and determined Claimant's claims of subjective pain were not credible in light of "inconsisten[cies] with the objective medical evidence," but without performing the first step of the *Craig* test. (R. 30).

Defendant contends Claimant's argument - that *Craig* imposes an absolute requirement to expressly apply step one of the credibility analysis "at a particular point in his decision or using particular language" - is an overstatement of *Craig*. Mem. in Supp. of Comm'r Mot. for J. on the Pleadings at 10 ("Def.'s Mem."). In particular, Defendant proposes that *Craig* "stands for the proposition that the ALJ's decision, as a whole, must be sufficiently explicit to allow the Court to conduct a meaningful judicial review of the ALJ's two-part credibility analysis." *Id.* That is, the ALJ satisfies *Craig* if, considering the decision in its entirety, a claimant's medically-determinable impairments have been identified somewhere in the decision with specificity. *See*

*id.* at 12 (explaining an ALJ's identification of medically-determinable impairments may be discerned from various portions of his decision). In support of this contention, Defendant maintains that the two-part credibility test in *Craig* arose as a result of the ALJ's "vague" step-two finding, wherein the ALJ found the claimant suffered from "'severe impairments of the musculoskeletal system,'" *id.* at 13 (quoting *Craig*, 76 F.3d at 589), and failed to "identify the portions of that body-wide system affected by the impairments." *Id.* at 14. Defendant argues, therefore, that as a result of "this utter lack of specificity, the [*Craig*] [c]ourt could not reasonably discern whether the ALJ had concluded that [the claimant's] various subjective complaints were based on an underlying medically-determinable impairment." *Id.*

In support of its interpretation of *Craig*, Defendant cites *Nelson v. Apfel*, 1998 WL 879588 (4th Cir. Aug. 3, 1998) (unpublished). In *Nelson*, the court upheld the ALJ's credibility determination despite his failure to make an explicit step-one finding pursuant to *Craig*. *See Nelson*, 1998 WL 879588, at *3. In particular, upon noting that "the ALJ considered all the impairments [the claimant] claimed to have and, if relevant, the pain allegedly associated with the impairment," the court concluded the ALJ "did in fact address the threshold question." *Id.* at 3. Similarly, in the case at bar, Defendant notes that at step two, the ALJ found Claimant suffered from seven severe impairments. Def.'s Mem. at 15; (R. 25, 31). Based on this finding, Defendant concludes the ALJ addressed the threshold question, and specifically identifies the ALJ's finding that "[d]ue to [Claimant's] asthma, he should avoid even moderate exposure to environmental irritants...." (R. 30) as an example supporting this conclusion. Def.'s Mem. at 16.

While Defendant's position is well-taken, this Court finds that the better approach is applying the analysis as established in *Craig*. *See Bradley v. Barnhart*, 463 F. Supp. 2d 577, 582

10

(S.D. W. Va. 2006) (remanding case for ALJ's failure to address step one despite characterizing defendant's position that such failure is harmless as not "illogical"); *see also Hill v. Comm'r of Soc. Sec.*, 49 F. Supp. 2d 865, 870 (S.D. W. Va. 1999) (remanding case for failure to complete step one despite defendant's contention that such action would be a waste of judicial and administrative resources). Accordingly, remand is necessitated in this case by the ALJ's failure to perform the step-one analysis. *See Gavigan v. Barnhart*, 261 F. Supp. 2d 334, 339 (D. Md. 2003) (noting remand is necessary even though the performance of the step two analysis by the ALJ suggests he reached a conclusion with respect to step one "because the court cannot speculate as to the ALJ's reasoning") (*citing Cook v. Heckler*, 783 F.2d 1168, 1174 (4th Cir. 1986) (remanding, in part, for failure to explain findings adequately)); *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (explaining that the "duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain")).

Because this Court finds that remand on the issue of credibility will affect the RFC assignment of error raised by Claimant, it does not rule on the legal sufficiency of this issue. Nevertheless, for guidance on remand, the Court notes that the last progress note from Claimant's back surgeon, dated 3 July 2003, restricted Claimant to lifting no more than fifteen pounds (R. 313) - a lifting restriction which exceeds Claimant's RFC. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining light work). Defendant relies on the following evidence in support of the ALJ's finding that Claimant is capable of performing work light in exertion: (1) the 21 October 2002 progress note by Robert C. Martin, M.D., Claimant's shoulder surgeon, imposing a permanent lifting restriction of fifty pounds or less (172); and (2) RFC determinations by two state agency consultants finding Claimant capable of lifting ten pounds

11

frequently and twenty pounds occasionally (R. 129-36, 141-48). Mem. of Law in Supp. of Comm'r's Mot. for J. on the Pleadings at 21 (Def.'s Mem.). Moreover, Defendant avers that "the record evidences that [Claimant's] doctors never intended such restrictions to be permanent, as his doctors changed such restrictions numerous times in a ten-month period." Def.'s Mem. at 19. Finally, Defendant contends that neither the VE nor Claimant testified that Claimant's security job duties would require any lifting. *Id.* at 22.

While Defendant notes correctly the permanent limitation imposed by Dr. Martin, Defendant fails to acknowledge the limitation was in regard to Claimant's shoulder only. Moreover, approximately nine months after Claimant's follow-up with Dr. Martin, David Miller, M.D., Claimant's back surgeon, imposed a lifting restriction of fifteen pounds. (R. 313). As for the state agency RFC assessments, the Court notes that the first assessment, dated 12 August 2002, occurred prior to Claimant's back surgery on 6 November 2002. The second RFC assessment, which post-dates Claimant's surgery, contains a summary of Dr. Miller's 10 December 2002 progress note; however, it fails to mention the fifteen pound lifting restriction and does not provide a justification for finding otherwise. (R. 147-48). Moreover, the Court acknowledges the numerous changes to lifting restrictions appearing within the record, including Dr. Miller's "no lifting over 25 pounds" restriction imposed on 11 February 2003. (R. 317). However, per Dr. Miller's 3 July 2003 progress note, Claimant was again restricted to lifting no more than fifteen pounds. (R. 313). Moreover, despite Defendant's contention to the contrary, it is not self-evident that the restrictions imposed are only temporary in nature.

The opinion of a treating physician is generally "entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged

12

period of time." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). "Therefore, it may be disregarded only if there is persuasive contradictory evidence." *Id.* Given the inconsistency between the ALJ's RFC assessment and the lifting limitation imposed by Dr. Miller, Claimant's treating back physician, the Court is troubled by the ALJ's lack of explicit explanation of this aspect of his decision.

### III. Claimant's work as a security guard is not past relevant work.

Claimant contends his employment as a security guard does not qualify as past relevant work because it exceeds the lifting restriction imposed by his treating physician and the wages earned are insufficient to qualify as substantial and gainful.

"Past relevant work" is defined as "work that [the claimant] has done within the last 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Substantial gainful activity ("SGA") is work that is both substantial, in that it involves doing significant mental or physical activities on a full- or part-time basis, and gainful, in that it is the kind of work usually done for pay or profit. *Id.* §§ 404.1510, 416.910; *see also id.* §§ 404.1572(a)-(b), 416.972(a)-(b). The regulations provide guidelines to assist in the determination of whether work was SGA, including average income guidelines. 20 C.F.R. §§ 404.1574(a), 416.974(a). For work performed between 1998 and 2000, the time period during which Claimant worked as a part-time security guard, if the employee's earnings averaged more than $700 a month ($500 in 1998), such earnings serve as an indicator that the work was SGA. *See* 20 C.F.R. §§ 404.1574(b)(i), 416.974(b)(2)(i).

The record in this case shows that Claimant worked part-time as a security guard from 1998-2000. (R. 96). It is not disputed that Claimant's employment (1) occurred within the last

13

fifteen years prior to his application for benefits, (2) it was substantial gainful activity in that the job entailed significant mental or physical activities and it was performed by Claimant for a pay; and (3) Claimant worked as security guard long enough to learn how to perform the required duties. However, Claimant contends his earnings as a security guard, below the threshold limits for the period between 1998 and 2000, are insufficient to demonstrate substantial gainful activity.[2] *See* Pl.'s Mem. at 24. Defendant counters that Claimant's 1998-2000 combined earnings from his full-time and part-time positions demonstrate SGA. *See* Def.'s Mem. at 22. Defendant contends further that had Claimant "chosen to make his security job his full-time job, his earnings for that job would have individually exceeded SGA levels." *See id.* at 24. Finally, Defendant contends Claimant's decision to work part-time as a security guard "was entirely unrelated to any physical impairment" given his employment as a security guard "occurred before the April 2000 accident causing his alleged impairments." *See id.* at 23.

The Court agrees that Claimant's employment as a security guard occurred within the last 15 years and lasted long enough for Claimant to perform the required duties thereof. Moreover, the work involved performing significant mental or physical activities on a part-time basis and was performed for pay. Accordingly, Claimant's employment as a security guard satisfies the statutory definitions of past relevant work and substantial gainful activity. However, the regulations provide also that "in evaluating [a claimant's] work activity for [SGA] purposes, [the

---

[2] Earning $6.00 per hour as a security guard, Claimant indicated that he worked fourteen hours per week in his work history report and testified to working eighteen hours a week. (R. 78, 393). Thus, Claimant calculates his monthly earnings as a security guard "between $84 to $108 per week or between $336 to $468 per month." Pl.'s Mem. at 24. "Earnings are generally averaged over the actual period of time in which work was performed." S.S.R. 83-35, 1983 WL 31257, at *1 (Nov. 30, 1982). However, Claimant did not provide his gross earnings; thus, the Court is unable to determine Claimant's average monthly earnings for purposes of the earnings test.

14

ALJ's] primary consideration will be the earnings [the claimant] derive[s] from the work activity." 20 C.F.R. § 404.1574(a)(1), 416.974(a)(1). The regulations do not indicate that the ALJ may aggregate wages from multiple jobs, as argued by Defendant, for purposes of deeming one job as past relevant work, and Defendant cites no authority for this proposition. Also, this Court can find no authority, and Defendant cites none, for the proposition that an ALJ may extrapolate a claimant's hourly wage for part-time work into a corresponding full-time job for purposes of deeming a part-time job as past relevant work. Accordingly, this Court finds the ALJ erred in finding Claimant's work as a security guard constituted SGA. Because the Court finds that remand as to this issue is appropriate, it does not reach Claimant's final argument.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED in part and DENIED in part, Defendant's Motion for Judgment on the Pleadings be GRANTED in part and DENIED in part, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

15

This, the 18th day of September, 2008.

                                                                       /s/ Robert B. Jones, Jr.
                                                                       Robert B. Jones, Jr.
                                                                      United States Magistrate Judge